## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LUMIMOVE, INC., d/b/a WPC TECHNOLOGIES, <br><br> Plaintiff, <br> v. <br><br> UNITED STATES, <br><br> Defendant, | Court No. 24-00105 |

## COMPLAINT

Lumimove, Inc. d/b/a/ WPC Technologies ("WPC Technologies" or "plaintiff") by and through its attorneys alleges and states the following claims against defendant, the United States:

### JURISDICTIONAL STATEMENT

1. WPC Technology seeks judicial review of the Final Results of Antidumping Duty Administrative Review on Strontium Chromate from Austria, for the period November 1, 2021 through October 31, 2022, issued by the U.S. Department of Commerce ("Commerce") on May 21, 2024 (the "Final Results").

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because this action contests Commerce's Final Results under 19 U.S.C. § 1516a(a)(2)(A)(i).

3. WPC Technologies is a U.S. manufacturer of corrosion-inhibiting pigments and stain inhibitors, as well as the petitioner that requested an investigation of imports of strontium chromate from Austria. As petitioner, WPC participated in Commerce's administrative review from which this case arises, and it has standing to commence this action pursuant to 28 U.S.C. §2631(c), 19 U.S.C. § 1516a(a)(2)(A)(i) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4.      Commerce issued the contested determination on May 14, 2024, and Commerce published the Final Results in the Federal Register on May 21, 2024.  This action was timely commenced by filing a summons on June 12, 2024, which was within 30 days of the date of publication in the Federal Register.  Therefore, this action was commenced within the time required pursuant to 19 U.S.C. §1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule USCIT Rule 6(a)(1).   This complaint is timely filed within 30 days of the filing of the Summons pursuant to 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

5.      On November 27, 2019, Commerce published the antidumping duty order on strontium chromate from Austria (the "Order").  The Order covers strontium chromate, regardless of form (including but not limited to, powder (sometimes known as granular), dispersions (sometimes known as paste), or in any solution).

6.      On November 1, 2022, Commerce published a notice of opportunity to request an administrative review of the Order for the period of November 1, 2021 through October 31, 2022 (the "Period of Review").

7.      In response, Habich GmbH ("Habich") requested that Commerce conduct an administrative review of its sales during the Period of Review.  Commerce initiated its review of Habich's sales on January 3, 2023.

8.      On July 24, 2023, Commerce extended the deadline for the preliminary results of its review until November 30, 2023.  On November 30, 2023, Commerce issued its preliminary decision memorandum, and it published the preliminary results of its administrative review in the Federal Register on December 7, 2023.  Commerce issued its final decision memorandum on May 14, 2024, and published its final results of its administrative review in the Federal Register on May 21, 2024.

9. Habich participated in the underlying administrative review by filing responses to Commerce's initial and supplemental questionnaires, and by participating in a verification that Commerce conducted at the request of WPC Technologies.

10. WPC Technologies participated in the administrative review by filing multiple rounds of comments identifying deficiencies in Habich's submissions. These comments, as well as WPC Technologies' case brief, identified numerous issues that Commerce should have examined in order to conduct a full and complete administrative review in accordance with its statutory obligations.

11. The issues identified by WPC Technologies included (1) Commerce's failure to investigate and discern the level of affiliation or close supplier relationship between Habich and its U.S. customers; (2) Commerce's failure to conduct a full and complete analysis of whether Habich's sales to Mexico are made in the ordinary course of trade; (3) Habich's failure to report accurate costs of production, as well as Commerce's failure to verify the reported costs; and (4) Commerce's failure to meet its statutory obligation to conduct the administrative review in accordance with law.

12. WPC Technologies requested that Commerce investigate whether Habich and its U.S. customers were "affiliated," as defined in Section 771(33) of the Tariff Act of 1930 (as amended). WPC Technologies noted Habich's admission in its questionnaire responses that it is reliant on the U.S. customers for the critical U.S. market, and that the companies operate on mutual trust, not pursuant to an exclusive sales or distributor agreement.

13. Despite Habich's admission of a close relationship with its U.S. customers, Commerce only analyzed the companies' legal relationship, failing to gather information in order to analyze the "operational relationship," as required by the governing statute.

14. WPC Technologies requested that Commerce examine whether Mexico is a true comparison market, in determining whether sales of subject merchandise were made at prices below normal value

3

("NV"). Pursuant to 19 C.F.R. § 351.414, Commerce calculates weighted-average dumping margins by comparing weighted-average NVs to weighted-average export price ("EP") or constructed export price ("CEPs"). Commerce determined in its administrative review that Habich's home market, Austria, was not a viable comparison market, because the aggregate volume of home market sales of the foreign like product was less than five percent of the aggregate volume of its U.S. sales of the subject merchandise. As a result, Commerce used Habich's sales to Mexico as the basis for NV.

15. Commerce, however, failed to properly solicit the requisite information from Habich to determine whether Mexico is a true comparison market. As WPC Technologies explained in its deficiency comments and case brief, information on the record demonstrated that Mexico is not a separate, independent, and viable comparison market, but as a factual matter, appears to simply be a part of the U.S. market, and the record evidence provided no basis upon which Commerce could reasonably rely on Mexico to calculate NV.

16. In addition, WPC Technologies referred to the record and argued that certain quarterly costs reported by Habich were aberrational, in that they ignored certain direct market costs. As a result, WPC Technologies requested that Commerce revise its cost-test by utilizing a simple average of the reported costs for the quarters without discrepancies as representative of the costs for the quarter containing discrepancies.

17. Despite clear record evidence of discrepancies in Habich's reported costs, Commerce determined that "no material discrepancies" exist, and that it had "no reason to doubt the integrity or accuracy of Habich's cost responses."

18. WPC also explained in its case brief that the agency had failed to meet its statutory obligations set forth in 19 U.S.C. §1677 and accompanying regulations, which tasks Commerce, and only

Commerce, with soliciting the information from Habich needed to make critical determinations regarding its dumping analysis.

19.     Despite the numerous unverified and unresolved discrepancies identified by WPC Technologies, Commerce determined, both in its preliminary and final determinations, that Habich had no sales of subject merchandise at prices below normal value during the Period of Review. As a result, Commerce assigned Habich a weighted-average dumping margin of 0.00 (*de minimis*).

20.     This appeal followed.

**COUNT 1**

21.     Plaintiff hereby incorporates, by reference, paragraphs 1 through 20 above.

22.     Section 771(33) of the Tariff Act of 1930 (as amended) defines "affiliated" and "affiliated persons" as, *inter alia*, "[a]ny person who *controls* any other person and such other person," which means the person "is legally or operationally in a position to exercise restraint or direction over the other person" (emphasis added).

23.     By refusing to solicit the necessary information, and thereby failing to conduct a fulsome examination into whether Habich can exercise control over its U.S. customers, or vice versa, Commerce's determination that no "close supplier relationship" exists between the companies was unsupported by substantial evidence and not in accordance with law.

**COUNT 2**

24.     Plaintiff hereby incorporates, by reference, paragraphs 1 through 23 above.

25.     Pursuant to 19 C.F.R. § 351.414, Commerce is required to calculate weighted-average dumping margins by comparing weighted-average NVs to weighted-average EP or CEP. If no viable home market exists for calculating NV, meaning the aggregate volume of home market sales of the foreign like product is less than five percent of the aggregate volume of U.S. sales, Commerce may instead use a

respondent's sales of the foreign like product to a third country market as the basis for comparison market sales.  19 USC § 1677b(a)(1)(B) and (C).  In order to use sales to a third country, however, the sales must be made "in the ordinary course of trade."  19 USC § 1677b(a)(C)(i).

26.    Commerce failed to solicit and conduct the administrative review in a manner that accurately determined if Habich's use of Mexico as a comparison market ensured that the sales were in the ordinary course of trade and therefore viable pursuant to both the articulated statutory and regulatory criteria.

27.    Because Commerce failed to solicit information that was necessary to determining whether Mexico is a valid comparison market for calculating normal value under 19 USC § 1677b(a), its decision to use Mexico as a comparison market was unsupported by substantial evidence and not in accordance with law.

## COUNT 3

28.    Plaintiff hereby incorporates, by reference, paragraphs 1 through 27 above.

29.    In conducting an administrative review of an antidumping order, Commerce "shall request information necessary to calculate the constructed value and cost of production" to determine "whether there are reasonable grounds to believe or suspect that sales of the foreign like product have been made at prices that represent less than the cost of production of the product."  19 USC § 1677b(2)(A)(ii).

30.    In the underlying administrative review, Commerce failed to accurately review evidence placed on the record demonstrating that Habich's reported costs were distortive and unreliable.

31.    Despite clear record evidence of discrepancies, Commerce utilized aberrational costs to calculate Habich's cost of production in contravention of the statute.

32.    Commerce determination to include inaccurate and unreliable data in its cost calculations was unsupported by substantial evidence and not in accordance with law.

## COUNT 4

33. Plaintiff hereby incorporates, by reference, paragraphs 1 through 32 above.

34. Section 771 of the Tariff Act of 1930 (as amended) explicitly states that Commerce is responsible for administering antidumping duty orders, including by conducting administrative reviews. 19 U.S.C. §1677. Commerce's implementing regulations clarify that this responsibility includes soliciting all necessary information from a respondent whose sales are subject to that review. 19 C.F.R. § 351.301(c)(1)(v). No other entity, not even petitioner, has authority to require a respondent to provide information in an administrative review, no matter how crucial the information.

35. Commerce failed to conduct an administrative review in accordance with its statutory authority, as it failed to issue follow-up questions to Habich related to critical aspects of its dumping analysis. As a result, the record lacks key information including (1) the nature of Habich's relationship with its U.S. customers; (2) whether Mexico is a valid comparison market for the calculation of normal value; and (3) a cost calculation using only reliable data. As a result, the Final Results are unsupported by substantial evidence and not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiff respectfully request that this Court:

(1) Enter judgment in favor of WPC Technologies;

(2) Hold unlawful Commerce's Final Results challenged in this Complaint;

(3) Remand this proceeding to Commerce with instructions to revise its Final Results in conformity with the Court's decision; and

(4) Grant WPC such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Nithya Nagarajan